FILED

MAY 2 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

LIFENET, INC.,

    Plaintiff/Counterclaim-Defendant,

        v.

MUSCULOSKELETAL TRANSPLANT
FOUNDATION

    Defendant/Counterclaim-Plaintiff.

Case: 1:07-mc-00224
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 5/24/2007
Description: Misc.

Civil Action No. 3:06CV387-HEH (E.D. Va.)

**MOTION OF**
**THIRD PARTIES VAISHALI UDUPA AND JOHN S. HALE'S**
**TO QUASH, OR ALTERNATIVELY TO MODIFY, SUBPOENAS**
**PURSUANT TO FED. R. CIV. P. 45(c)(3)(A) AND 26(c)**

Lifenet, Inc.
6300 Hampton Rd.
Texarkana, TX  75563
(903) 832 -8531


Musculoskeletal Transplant
Foundation
125 may Street
Edison  NJ  08837
(732) 661 - 0202

Danielle Hohos (Bar No. 485633)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Tel. (202) 879-3939
*Counsel for Movants Vaishali Udupa*
*and John S. Hale*

OF COUNSEL:
Robert W. Gaffey
William J. Hine
Tracy V. Schaffer
JONES DAY
222 East 41st Street
New York, New York  10017
Tel: (212) 326-3939

Pursuant to Federal Rules pf Civil Procedure 45(c)(3)(A) and 26(c) and based on the accompanying Memorandum of Points and Authorities in Support of this motion, Movants Vaishali Udupa and John S. Hale  by and through their undersigned counsel, respectfully requests that this Court quash plaintiff LifeNet's third party subpoenas issued to Udupa and Hale.   WHEREFORE, movants respectfully request:

That the Court grant the motion, in the form submitted and grant such other relief as may be necessary and appropriate to protect movants Udupa and Hale.

Respectfully submitted,

Dated:  May 24, 2007

Danielle Hohos (Bar No. 485633)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Tel. (202) 879-3939
*Counsel for Movants Vaishali Udupa
and John S. Hale*

OF COUNSEL:

Robert W. Gaffey
William J. Hine
Tracy V. Schaffer
JONES DAY
222 East 41st Street
New York, New York  10017
Tel: (212) 326-3939

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2007, I caused a true and correct copy of the foregoing Motion on behalf of Third Parties Vaishali Udupa and John S. Hale's Motion to Quash or Alternatively to Modify Subpoenas Pursuant to Fed. R. Civ. P. 45 (c)(3)(A) and 26(c) on the following individuals:

**VIA FEDERAL EXPRESS**
Craig T. Merritt)
R. Braxton Hill, IV
Christian & Barton LLP
909 East Main Street, Suite 1200
Richmond, VA 23219

**VIA HAND DELIVERY**
W. Jackson Matney, Jr.
Robert W. Busby
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

_____
Danielle M. Hohos

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LIFENET, INC., | Misc. Civil Action No.: |
| Plaintiff/Counterclaim-Defendant, | |
| v. | Civil Action No. 3:06CV387-HEH (E.D. Va.) |
| MUSCULOSKELETAL TRANSPLANT FOUNDATION | |
| Defendant/Counterclaim-Plaintiff. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THIRD PARTIES VAISHALI UDUPA AND JOHN S. HALE'S
MOTION TO QUASH, OR ALTERNATIVELY TO MODIFY, SUBPOENAS
PURSUANT TO FED. R. CIV. P. 45(c)(3)(A) AND 26(c)**

Danielle Hohos (Bar No. 485633)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel. (202) 879-3939
*Counsel for Movants Vaishali Udupa
and John S. Hale*

OF COUNSEL:
Robert W. Gaffey
William J. Hine
Tracy V. Schaffer
JONES DAY
222 East 41st Street
New York, New York 10017
Tel: (212) 326-3939

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND...................................................................................4

    The Virginia Litigation.................................................................................4

    MTF Asserted an Advice of Counsel Defense and Has Produced Documents
        Related Thereto.................................................................................6

    MTF's Motion to Disqualify Morgan Lewis, Counsel for LifeNet....................................7

    LifeNet Retaliates by Serving MTF's Trial Counsel With Subpoenas .............................8

ARGUMENT...................................................................................9

I.    The Third Party Subpoenas Should Be Quashed Because They Are Overbroad
    and Unduly Burdensome .................................................................10

II.    The Third Party Subpoenas Should Be Quashed In Their Entirety Because They
    Were Issued Purely For Harassment and Retaliatory Purposes .........................12

III.    The Third Party Subpoenas Should Be Quashed, Or, In The Alternative, Modified
    Because They Improperly Seek To Intrude on Privileged Matters ......................13

    A.    Third Party Subpoenas Cannot Be Used to Subvert an Opponent's
        Attorney-Client Relationship With Its Counsel......................................13

    B.    Shelton Requires That The Third Party Subpoenas Be Quashed .........................14

    C.    In The Alternative, The Third Party Subpoenas Should Be Modified To
        Limit Testimony To The Patents-In-Suit And to Non-Privileged
        Information ...........................................................................15

        1.    At the Very Least, The Udupa Subpoena Should Be Modified to
            Limit its Scope, Time Period and Subject Matter ...................................16

        2.    At the Very Least, the Hale Subpoena Should Be Modified to
            Limit its Scope, Time Period and Subject Matter ...................................17

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Corp. for Public Broad. & Education Broad. Corp. v. Am. Auto. Centennial Comm'n*,
Civ. No. 1:97CV01810, 1999 WL 1815561 (D.D.C. Feb. 2, 1999).........................................13, 14

*Dag Enters. v. Exxon Mobil Corp.*,
 No. Civ. A. 00-182 (CKK), 2004 WL 3312154 (D.D.C. Jan. 28, 2004).....................................12

*\*In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) ...........................15, 16

*Intex Recreation Corp. v. Team Worldwide Corp.*, 439 F. Supp. 2d 46 (D.D.C. 2006) ...............16

*Kuwait Airways Corp. v. America Sec. Bank, N.A.*, Civ. A. No. 86-2542, 1987 WL 11994
(D.D.C. May 26, 1987)..................................................................................................................12

*McCarthy v. Sarroff*, No. 02 Civ. 6030, 2003 WL 21145573 (S.D.N.Y. May 16, 2003).............12

*N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005).....................................................10

*Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395 (D.C. Cir. 1984)...........................10

*\*Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ...............................3, 13, 14, 15, 16

*United States v. Philip Morris Inc.*, 209 F.R.D. 13 (D.D.C. 2002) ...............................................12

*Watts v. S.E.C.*, 482 F.3d 501 (D.C. Cir. 2007)...........................................................................10

## RULES

Fed. R. Civ. P. 26 ...........................................................................................................................9, 10

Fed. R. Civ. P. 45  .........................................................................................................................10, 11

## MISCELLANEOUS

9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2463
      (1995)........................................................................................................................................11

Movants Vaishali Udupa, Esq. and John S. Hale, Esq. (the "Movants") are both attorneys who have represented Musculoskeletal Transplant Foundation ("MTF"), the defendant in a patent infringement case pending in the Eastern District of Virginia encaptioned *LifeNet, Inc. v. Musculoskeletal Transplant Foundation*, Civil Action No. 06-CV-387 (E.D.Va.) (HEH) (the "Virginia litigation"). The Movants respectfully submit this memorandum in support of their motion pursuant to Fed. R. Civ. P. 45(c)(3)(A) and 26(c) (the "Motion") to quash, or alternatively to modify, third party subpoenas served on them (the "Third Party Subpoenas") by LifeNet, Inc. ("LifeNet"), the plaintiff in the Virginia Litigation. Pursuant to United States District Court for the District of Columbia Local Rule 7(f), Movants request an oral hearing on the Motion.

## PRELIMINARY STATEMENT

This motion arises from LifeNet's misuse of Rule 45 to harass MTF and its attorneys. In transparent retaliation for MTF's moving to disqualify LifeNet's counsel in the Virginia Litigation, LifeNet has issued four strategic subpoenas to four of MTF's attorneys. In the Virginia Litigation, MTF has stated its intention to rely on an advice of counsel defense based on several opinions of counsel advising MTF with respect to the patents at issue in the case. MTF received one of those opinions from Scott Stimpson, an attorney at Pennie & Edmonds when the opinion was issued but who thereafter moved to the firm of Morgan, Lewis & Bockius LLP ("Morgan Lewis"), which represents LifeNet in the Virginia Litigation. Since Morgan Lewis was acting as counsel for LifeNet, MTF moved to disqualify the firm based on its obvious conflict of interest. The Virginia court found that a conflict existed but denied the motion because Morgan Lewis claimed it had cured the conflict through Stimpson's withdrawal from the firm. Just two weeks after the court's decision, LifeNet's counsel (Morgan Lewis)

served third party subpoenas on four of MTF's attorneys, two of whom have been acting for many months as trial counsel for MTF, and the other two of whom are the Movants here.[1]

Tellingly, LifeNet has sought no discovery from Stimpson, the author of the above-mentioned opinion, and LifeNet has not yet obtained discovery from MTF's employees as to the company's reliance on any of the opinions in question – the only legitimate area of inquiry as to these opinions and the advice of counsel defense proffered in the Virginia Litigation. Rather, LifeNet seeks to depose four of MTF's attorneys at a time when MTF's trial counsel are actively preparing for an upcoming "Markman Hearing" to determine the construction of claims under the patents-in-suit and otherwise working to meet very demanding and truncated discovery schedules and to prepare for trial in less than five months. And LifeNet has rejected all efforts to reschedule the return dates for the subpoenas to accommodate either (i) an expected opinion from the magistrate judge on the scope of document discovery (a draft of which he just issued on May 22, 2007) or (ii) MTF trial counsel's preparations for the pending "Markman Hearing."

In addition to trying to depose MTF's trial counsel, LifeNet also seeks to depose Movant Vaishali Udupa, currently a Jones Day lawyer, who at the pertinent time was a second-year associate at Pennie & Edmonds with no involvement whatsoever in the opinions prepared by Movant Hale and no recollection of the details of her minor involvement, as a junior associate, with the opinion written by Stimpson. The subpoena issued to Udupa is utterly unlimited in scope, time frame and subject matter, and appears aimed at conducting a fishing expedition as to issues far beyond her apparent narrow role in one of the opinions in question.

LifeNet also seeks to depose Movant John Hale, the author of several of the opinions at issue, but again LifeNet makes no effort to limit the subpoena's scope, time frame or

---

[1] The other two attorneys will be moving to quash the third party subpoenas served on them in the Southern District of New York, where those subpoenas were issued.

subject matter to an appropriate level of inquiry. The Third Party Subpoenas should be quashed in their entirety for three reasons.

First, the deposition discovery LifeNet seeks is overbroad and unduly burdensome. The deposition subpoenas are completely unlimited in scope or time period, and fail to make any attempt to limit the subject matters or areas of inquiry about which LifeNet hopes to ask questions to issues relevant to the subject matter of the Virginia Litigation. The Udupa Subpoena, in particular, should be quashed because it fails to seek information that is relevant to claims or defenses at issue in the patent infringement action and is not reasonably calculated to lead to the discovery of admissible evidence. Udupa had no involvement with the Hale opinions and does not recall the details of her minor involvement with the Stimpson opinion. (*See* Argument Point I below).

Second, the harassing and retaliatory nature of these subpoenas is itself a basis for quashing them. LifeNet's tactics are designed merely to distract trial counsel from preparing the case and to impose additional and unnecessary litigation costs on MTF (both in terms of money and wasted attorney manhours and resources). LifeNet's last minute refusal to reschedule the depositions to accommodate the reasonable requests of opposing counsel is not only an affront to notions of professional courtesy, it confirms the harassing intent of the subpoenas. Such tactics simply waste valuable judicial and client resources. (*See* Argument Point II).

Third, the well established *Shelton* rule requires that subpoenas directed to opposing counsel be quashed unless the party issuing the subpoena can show: (1) there is no other practical means to obtain the information sought; (2) the information is relevant and not privileged; and (3) the information is crucial to its preparation of the case. In this case, LifeNet can show none of these required elements. (*See* Argument Point III. A, B)

In the event that the Court does not quash the Third Party Subpoenas in their entirety, in the alternative, the subpoenas should be drastically modified to protect the recipients from the abusive tactics that appear to be the driving force underlying the requested discovery. At the very least, the Third Party Subpoenas should be altered to permit testimony in conformity with the May 22, 2007 draft opinion of Magistrate Judge Dohnal as to the scope of document discovery in the Virginia Litigation. In short, the deposition subpoenas should be modified to allow questioning only as to: (i) the contents of the opinions and the patents-in-suit on which the individual Movants each worked, (ii) the issues of validity, enforceability and infringement of such patents, and (iii) work product related to those issues that was communicated to MTF. As Magistrate Judge Dohnal wrote: "Documents analyzing the law, facts, trial strategy, and related work product that reflect the attorney's mental impressions and not communicated to MTF are not discoverable." In other words, the proper scope of the subpoenas does not include, as LifeNet appears to assert, trial strategy, work product that was not communicated to the client, and issues beyond those noted above. (*See* Argument Point III.C)

For these reasons, the Third Party Subpoenas should be quashed in their entirety, or at the very least they should be severely limited to protect MTF from unwarranted intrusions into areas that should not be the subject of discovery.

## **FACTUAL BACKGROUND**

### The Virginia Litigation

MTF is a non-profit organization involved in tissue procurement and tissue preparation, including the preparation of human bone tissue for transplantation. (*See* Declaration of Thomas G. Rowan, dated May 23, 2007 ("Rowan Decl."), ¶ 4) MTF provides processed bone tissue to various entities, including doctors and hospitals, for transplantation. (*Id.*) In preparing

bone tissue, MTF utilizes two processes that are relevant to this litigation: the first to clean the bones, and a separate process to demineralize bone. (*Id.*)

On or about June 5, 2006, LifeNet, a competitor of MTF's, filed a complaint, which was subsequently amended on December 11, 2006, alleging that MTF's bone cleaning and demineralization processes infringed four specific patents held by LifeNet: U.S. Patent No. 5,797,871 ("the '871 patent"), entitled "Ultrasonic Cleaning of Allograft Bone;" U.S. Patent No. 5,976,104 ("the '104 patent"), entitled "Recirculating Method for Cleaning Essentially Intact Bone Grafts Using Pressure Mediated Flow of Solutions and Bone Graft Produced Thereby;" U.S. Patent No. 6,189,537 ("the '537 patent"); and U.S. Patent No. 6,305,379 ("the '379 patent"), both entitled "Process for Producing Osteoinductive Bone, and Osteoinductive Bone Produced Thereby" (collectively, "the patents-in-suit"). (*Id.* ¶ 5) LifeNet has alleged willful infringement by MTF of the '871 and '104 patents based on MTF's use of its process for cleaning human bone tissue and its sale of products produced through this process. (*Id.* ¶ 6) LifeNet alleges separate patent infringement claims with respect to the '537 and '379 patents, which relate to the process for demineralizing human bone. (*Id.*)

In its Answer and Counterclaims, MTF asserted that it does not infringe any of the patents-in-suit and that the patents-in-suit are invalid for several reasons, including that certain of the claims under the patents are not novel in view of prior art. (*Id.* ¶ 7) Discovery in the litigation is currently on-going. There is a "Markman Hearing" scheduled for May 31, 2007 to address the construction of claims in the patents-in-suit. (*Id.* ¶ 8)

Under Virginia's so-called "rocket docket" the patent infringement litigation is proceeding at a fast pace. All fact discovery is to be completed by July 2, 2007, opening expert reports are due by July 9, 2007, with expert discovery concluding by August 3, 2007. (*Id.* ¶ 9)

The case is scheduled for trial starting October 15, 2007. (*Id.*) Accordingly, trial counsel have necessarily been working diligently and under pressured conditions to abide by this ambitious schedule established by the court. (*See id.* ¶ 9)

MTF Asserted an Advice of Counsel Defense and Has Produced Documents Related Thereto

On April 13, 2007, MTF's trial counsel advised the Court that, in defense of LifeNet's willful infringement claims, MTF intends to rely at trial on a February 19, 2002 opinion letter from MTF's attorney at the time, Scott Stimpson of Pennie & Edmonds LLP (the "Stimpson Opinion").[2] (*Id.* ¶ 10) The Stimpson Opinion contained, *inter alia*, an analysis of whether MTF's bone cleaning process infringed the '871 and '104 patents (the "Bone Cleaning Patents"), two of the patents-in-suit in the Virginia Litigation. In other words, MTF will argue that it acted in good faith in using its bone cleaning process because it relied on the Stimpson Opinion when it began to engage in the purportedly infringing conduct. (*Id.*)

At the time the Stimpson Opinion was prepared and issued, Udupa was a second year associate at Pennie & Edmonds. (*See* Declaration of Vaishali Udupa, dated May 23, 2007 ("Udupa Decl.") ¶ 3) Udupa was provided a copy of the Stimpson Opinion as a "cc" recipient, but she does not recall the details of her minor involvement in the preparation of the opinion, including in communications with MTF concerning the opinion. (*Id.* ¶ 4-6) John Hale had no involvement whatsoever in connection with the Stimpson Opinion. (Rowan Decl. ¶ 14)

MTF's trial counsel has also informed LifeNet that it intends to rely on certain other legal opinions issued by John Hale, of Gipple & Hale, in connection with the Virginia Litigation. (*Id.* ¶ 12) Mr. Hale has served as counsel for MTF for many years and on a number of other matters unrelated to the patents-in-suit. (*Id.*) The Hale opinions on which MTF intends

---

[2] Subsequently, numerous Pennie & Edmonds lawyers joined the law firm of Jones Day. Jones Day is trial counsel for MTF. (*See* Rowan Decl. ¶ 10)

to rely (the "Hale Opinions") are those relating to the Bone Cleaning Patents, as well as the '537 and '379 patents concerning demineralization. (*Id.*) Udupa had no involvement whatsoever with the Hale Opinions. (Udupa Decl. ¶ 8)

On April 25, 2007, MTF produced copies of the Stimpson Opinions to LifeNet, along with nearly 400 pages of documents related to its preparation. (Rowan Decl. ¶ 13) On May 18, 2007, MTF produced four of the Hale Opinions, along with close to 1,000 pages of documents embodying or discussing communications between MTF and its non-trial counsel concerning whether the patents-in-suit are valid, enforceable or infringed by MTF. (*Id.*)

Indicating that its true goal is to disrupt MTF, and not to seek proper discovery from the authors of the relevant opinions, LifeNet has only issued a subpoena for documents and testimony from John Hale (who continues to work as counsel for MTF). It has sought no discovery (either documents or testimony) from the author of the Stimpson Opinion, *i.e.*, Scott Stimpson, the former partner at LifeNet's counsel Morgan Lewis, (who no longer represents MTF). (*Id.* ¶ 14)

<u>MTF's Motion to Disqualify Morgan Lewis, Counsel for LifeNet</u>

As noted, on March 13, 2007, MTF moved to disqualify Morgan Lewis from representing LifeNet in the Virginia Litigation. (Rowan Decl. ¶15) At the time of MTF's motion, Scott Stimpson, the author of the Stimpson Opinion, was a partner at Morgan Lewis. (*Id.* ¶) While a partner at his former firm, Pennie & Edmonds, Stimpson received privileged and confidential information from MTF for the purpose of providing legal advice concerning the Bone Cleaning Patents, and on that basis issued the Stimpson Opinion. Thereafter, Stimpson became a member of Morgan Lewis. (*Id.*) MTF consequently moved to disqualify Morgan Lewis from acting as counsel for LifeNet because one of its members had been privy to privileged and confidential information while engaged by MTF. (*Id.*)

Judge Hudson, the judge presiding over the Virginia Litigation, held that a conflict of interest existed for Morgan Lewis under the Virginia Rules of Professional Conduct. But Judge Hudson denied MTF's motion to disqualify because Stimpson had subsequently withdrawn from the Morgan Lewis firm. (*Id.* ¶ 16, Ex. B) The court held that this appeared "to have relieved the imputed conflict driving the disqualification requirement." (*Id.*)

<u>LifeNet Retaliates by Serving MTF's Trial Counsel With Subpoenas</u>

Less than two weeks after the court decided MTF's motion to disqualify, LifeNet served four of MTF's lawyers (two of whom are the Movants here) with third party subpoenas for documents and deposition testimony. (Rowan Decl. ¶ 18)[3] On or about May 4, 2007, MTF counsel Hale and Udupa were each served with a subpoena, issued out of this Court, instructing them to produce numerous documents and appear at deposition on May 25 and 29, 2007, respectively (*Id.*, Ex. A; Udupa Decl., Ex. A )[4] In what was clearly no coincidence, given LifeNet's strategic purpose, the return dates for these four subpoenas were set for the three business days prior to the scheduled "Markman Hearing," a proceeding that likely will prove important to the Virginia Litigation and for which MTF's lawyers will be preparing on the stated return dates. (*Id.* ¶ 19) LifeNet's gamesmanship in this regard was confirmed when MTF's trial counsel informed LifeNet's counsel that the subpoena recipients were going to move to quash the Third Party Subpoenas. Apparently satisfied that his strategic plan had at least provoked the need for a motion, and thus successfully would disrupt MTF's preparation, a member of LifeNet's litigation team laughingly asked Rowan why did not want to be deposed while he was preparing for the "Markman Hearing." (*See id.* ¶ 20)

---

[3] The Movants have already responded and objected to the document requests contained in the Third Party Subpoenas. (Rowan Decl. ¶ 18)

[4] LifeNet also served MTF's trial counsel Brian M. Poissant and Thomas G. Rowan, both in Jones Day's New York office, with similar third party subpoenas issued out of the District Court for the Southern District of New York. (Rowan Decl. ¶ 18) These individuals are moving to quash their deposition subpoenas on grounds similar to those raised in this Motion. (*Id.*)

LifeNet's harassing tactics continued as MTF tried to meet and confer in good faith as to the subpoenas and the possibility of MTF filing a motion to quash. Anticipating that Magistrate Judge Dohnal would be issuing an opinion on or about May 23 with respect to a pending motion by LifeNet to compel the production of certain documents, and expecting that such opinion would inform all parties as to the scope of discovery in the Virginia Litigation, on May 21, 2007, counsel for MTF proposed that the return dates for the Third Party Subpoenas be adjourned until the opinion was issued and the parties had a chance to review its holding. Shortly thereafter, the parties could confer as to whether motions to quash would be necessary or deposition dates could be set, depending on the tenor of the opinion. LifeNet refused and instead insisted that dates certain be established for the depositions, (*see* Rowan Decl. ¶ 21), a condition to which MTF could not agree. On May 22, 2007, Magistrate Judge Dohnal issued a draft of the expected opinion, and in light of his proposed ruling MTF contacted LifeNet on May 23 to propose that dates for the depositions be set in June and July of 2007 (after the pending "Markman Hearing.") LifeNet called back at the end of the work day and refused to budge from its original return dates. LifeNet's obstinacy in this regard has forced Movants to file this motion – in part, to preserve its trial counsel's preparation time for the "Markman Hearing."

## **ARGUMENT**

To protect parties and non-parties from abusive discovery practices, Rule 26(c) provides that "for good cause shown" a court may issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). For example, a district court may limit otherwise permissible discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or is obtainable from some other source that is more convenient,
> less burdensome, or less expensive; (ii) the party seeking discovery

has had ample opportunity by discovery in the action to obtain the
information sought; or (iii) the burden or expense of the proposed
discovery outweighs its likely benefit, taking into account the
needs of the case, the amount in controversy, the parties' resources,
the importance of the issues at stake in the litigation, and the
importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).

The Federal Rules afford similar protections for persons served with subpoenas.

In particular, Rule 45(c)(3)(A)(iii) provides that, upon motion of the person from whom

discovery is being sought, a subpoena "shall" be quashed or modified if, among other things, it

"requires disclosure of privileged or other protected matter and no exception or waiver applies"

or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii) & (iv). In addition, the

status of a witness as a non-party to the underlying litigation entitles the witness to consideration

regarding burden and inconvenience. *See, e.g., Watts v. S.E.C.*, 482 F.3d 501, 508-09 (D.C. Cir.

2007) (noting that Rule 45 requires district courts supervising discovery to be sensitive to costs

imposed on third parties). The determination of burden and reasonableness is committed to the

sound discretion of the court. *See Northrop Corp. v. McDonnell Douglas Corp.* 751 F.2d 395,

403, (D.C. Cir. 1984) (court has broad discretion in determining whether a subpoena should be

quashed on grounds of oppressiveness). In this case, the Court should exercise its discretion to

protect the Movants from the harassing and abusive discovery practices embodied in the Third

Party Subpoenas for the reasons discussed below.

## I.    The Third Party Subpoenas Should Be Quashed Because They Are Overbroad and Unduly Burdensome

A subpoena seeking irrelevant information or that would cause undue burden

should be quashed. *See Northrop Corp.,* 751 F.2d 395 at 403 (upholding grant of motion to

quash based on irrelevancy of discovery sought); *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49

(D.D.C. 2005) (granting motion to quash subpoenas of nonparties, including amici, because

evidence sought was irrelevant and would cause undue burden). Indeed, Rule 45(c)(1) expressly imposes on a "party or an attorney responsible for the issuance and service of a subpoena" the obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).

In this case, LifeNet's counsel made no effort to avoid imposing undue burden and expense, as Rule 45 mandates. The Third Party Subpoenas are in no way limited in scope, time period or subject matter as to the contemplated depositions. To the extent LifeNet's accompanying document requests are instructive as to the intended scope of the depositions, such requests seek documents relating, *inter alia*, to (i) patents that are not at issue in the Virginia Litigation, and (ii) documents that go beyond the questions of enforceability, validity and infringement of the patents-in-suit – both of which are outside the scope of any waiver of privilege, as discussed in Section III.C below. (*See, e.g.,* Rowan Decl. Ex. A; Udupa Decl. Ex. A) The document requests contain no cut-off dates or other time limitations. (*Id.*) Indeed, the Third Party Subpoenas appear to have been drafted as broadly as possible, the intention being to sweep in documents and testimony that are privileged and beyond the scope of legitimate discovery. LifeNet has thus disregarded its obligations under Rule 45(c)(1) to avoid imposing unreasonable burden, and the Third Party Subpoenas should be quashed on this ground alone.

In particular, the Udupa Subpoena should be quashed as unduly burdensome because Udupa has no personal knowledge of the Hale Opinions and does not recall the details of her minor involvement in the Stimpson Opinion. (*See* Udupa Decl. ¶ 5-8) *See, e.g.,* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2463 (1995) ("In the context of a subpoena ad testificandum, for example, it might be unduly burdensome to compel an adversary to attend trial as a witness if the adversary is known to have no personal knowledge of

the matters in dispute . . .").  To waste her time, and the time of MTF's counsel, forcing Udupa to

sit for a deposition on topics about which she has no knowledge or recollection is uncalled for

where, as here, the discovery in question is obtainable from other sources, as noted below.

**II.    The Third Party Subpoenas Should Be Quashed In Their Entirety Because They
         Were Issued Purely For Harassment and Retaliatory Purposes**

      The Third Party Subpoenas also should be quashed because of their intentionally

harassing and retaliatory nature.  Courts will quash a subpoena where the purpose of the

subpoena is to harass.  *See, e.g., Dag Enters. v. Exxon Mobil Corp.*, No. Civ. A. 00-182 (CKK),

2004 WL 3312154, at *5 (D.D.C. Jan. 28, 2004) ("The court also has the power to prevent the

use of depositions for harassment."); *United States  v. Philip Morris Inc.*, 209 F.R.D. 13,

19 (D.D.C. 2002) (noting that the Federal Rules limit discovery that might harass an individual);

*Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, Civ. A. No. 86-2542, 1987 WL 11994, at *3

(D.D.C. May 26, 1987) ("To prevent harassment, a few courts have required the examining party

to settle for corporate officers other than those noticed."); *see also McCarthy v. Sarroff*, No. 02

Civ. 6030, 2003 WL 21145573, at *1 (S.D.N.Y. May 16, 2003) (plaintiff's attorney's

explanations for the reason for subpoenaing defendant's wife were pretextual, and the subpoena

was being served to harass and embarrass defendant).

      As noted, the Third Party Subpoenas were served on four of MTF's attorneys less

than two weeks after the Virginia court ruled on MTF's motion to disqualify LifeNet's counsel.

The timing "coincidences" do not end there.  The depositions of Hale and Udupa were noticed

for May 25 and 29, 2007, and the depositions of MTF's trial counsel were noticed for May 29

and 30, 2007.  These are the three business days immediately preceding the important "Markman

Hearing" – a time when LifeNet knows MTF's lawyers will be engaged in extensive

preparations.  (Rowan Dec. ¶ 19)  And LifeNet has unreasonably refused to reschedule the

depositions for this exact reason. The Third Party Subpoenas, coupled with the trial counsel subpoenas, are a clumsy attempt by LifeNet to cause disruption and distraction to the MTF trial team in the Virginia Litigation.

LifeNet's attempt at harassment is further evidenced by the fact that it never even issued a subpoena or sought to depose Stimpson, the author of the Stimpson Opinion. (*Id.* ¶ 14) Indeed, LifeNet has conceded that it does not intend to call Stimpson as a witness at trial in this action. (*Id.* ¶ 17, Ex. C) Yet LifeNet still issued a subpoena to Udupa, who may have supplied low level assistance to Stimpson, the lawyer LifeNet curiously chose to leave alone.

LifeNet also issued these subpoenas to MTF's counsel before it even obtained deposition discovery from MTF's employees as to the company's reliance on the opinions in question. (*See* Rowan Decl. ¶ 14) MTF's employees are, of course, the best source of discovery on this issue. The fact that LifeNet has bypassed the sources most knowledgeable about the opinions in question – the author of one and the client – in favor of an attempt to rummage through the documents and communications of MTF's trial and other counsel speaks volumes about LifeNet's lack of any legitimate basis for these depositions.

**III.    The Third Party Subpoenas Should Be Quashed, Or, In The Alternative, Modified Because They Improperly Seek To Intrude on Privileged Matters**

**A.    Third Party Subpoenas Cannot Be Used to Subvert an Opponent's Attorney-Client Relationship With Its Counsel**

In this Circuit, depositions of opposing counsel are disfavored and will only be permitted if the party seeking the deposition can satisfy the three-prong test enumerated in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). *See Corp. for Pub. Broad. & Educ. Broad. Corp. v. Am. Auto. Centennial Comm'n,* Civ. No. 1:97CV01810, 1999 WL 1815561, at *2 (D.D.C. Feb. 2, 1999) (granting defendant's motion for protective order barring plaintiffs from deposing opposing counsel where plaintiff failed to satisfy *Shelton* test). Under

*Shelton*, the party must demonstrate: (1) there is no practical means other than deposing opposing counsel to obtain the information sought; (2) the information sought is relevant and not privileged; <u>and</u> (3) the information is crucial to preparation of the case. *Corporation for Pub. Broad & Educ. Broad. Corp.*, 1999 WL 1815561, at *2 (citing *Shelton,* 805 F.2d at 1327).

**B.     *Shelton* Requires That The Third Party Subpoenas Be Quashed**

Under the *Shelton* test, this Court should quash both the Udupa and Hale subpoenas. LifeNet cannot show that no other means exist to obtain the information it seeks. MTF has already produced the Stimpson Opinion and 400 pages of documents related to the preparation of that opinion. (Rowan Dec. ¶ 13) MTF has also produced four of the Hale Opinions and close to 1,000 pages or documents related thereto. (*Id.*) With respect to Udupa, she had no involvement in the preparation of the Hale Opinions (*see* Udupa Decl. ¶ 8), and has no recollection of the details of her involvement in the Stimpson Opinion or the patents-in-suit. (*Id.* ¶ 5) And with respect to both Third Party Subpoenas, LifeNet can depose MTF personnel concerning the only relevant issue here – MTF's reliance on the Stimpson and Hale Opinions.

Second, LifeNet cannot show that the information it seeks is relevant and non-privileged. As noted above, the Third Party Subpoenas are without limit as to scope, time or subject matter and will necessarily sweep in large amounts of irrelevant information. And as noted below, the privilege waiver at issue here resulting from MTF's proffered advice of counsel defense does not render all attorney-client communications, work product and mental impressions non-privileged. Finally, for the same reasons, LifeNet cannot show that the depositions of these two attorneys is crucial to their case.

C.    **In The Alternative, The Third Party Subpoenas Should Be Modified To Limit Testimony To The Patents-In-Suit And to Non-Privileged Information**

MTF expects that LifeNet will argue, as it has before, that the privilege waiver discussed in the Federal Circuit 's opinion in *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), should apply to this case.  In *EchoStar*, the court held that in a patent infringement litigation in which the defendant asserts a reliance on counsel defense to a claim of willful infringement:  (1) the defendant waives the attorney-client privilege as to communications relating to whether the patent-in-suit is valid, enforceable or has been infringed; and (2) the attorney work product privilege is waived to a more limited extent as to work product that was communicated to or reflects communications with the defendant.  *See In re EchoStar Communications Corp.*, 448 F.3d at 1299, 1302-04.

However, as Magistrate Judge Dohnal noted in his draft opinion, even under *EchoStar*, the waiver is not unlimited.  In *EchoStar*, the Federal Circuit noted that "[b]y asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *Id.* at 1303.  The Federal Circuit also noted, with respect to work product, that the waiver "extends only as far as to inform the court of the *infringer's* state of mind." *Id.*  "[I]f a legal opinion or mental impression was never communicated to the client, then it provides little, if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine." *Id.* at 1304.  The *EchoStar* court held that EchoStar's lawyers' work product that was not communicated to the client or did not reflect such a

communication is not within the scope of the waiver because it played no role in EchoStar's

mental state as to infringement of the patents-in-suit. *See id.* at 1305.[5]

      Therefore, should this Court apply *EchoStar*, the waiver of privilege in

connection with an advice of counsel defense is specific and limited in applicability. Indeed,

Magistrate Judge Dohnal's draft opinion reflects such limitations in the context of document

discovery, expressly noting that "[d]ocuments analyzing the law, facts, trial strategy, and related

work product that reflect the attorney's mental impressions and not communicated to MTF are

not discoverable."

### 1.    At the Very Least, The Udupa Subpoena Should Be Modified to Limit its Scope, Time Period and Subject Matter

      If the Court does not quash the Udupa Subpoena, it should modify it to prevent

potential abuse. As a result of MTF's assertion of an advice-of-counsel defense, LifeNet may be

entitled to discovery of certain otherwise privileged communications and information. However,

LifeNet must still demonstrate that the lawyer it seeks to depose has relevant information and

that such information is crucial to the preparation LifeNet's case. *See Shelton*, 805 F.3d at 1324.

In other words, just because MTF may have waived certain aspects of its attorney-client and

other privileges does not mean that LifeNet has *carte blanche* to depose any of MTF's lawyers it

wishes without some demonstration of relevance and necessity.

      Here, Udupa has little, if any, relevant information crucial to LifeNet's case.

Movant Udupa had no involvement in connection with the Hale Opinions. (Udupa Decl. ¶ 8)

With respect to the Stimpson Opinion, even though Udupa was a second-year associate copied

on the opinion, she does not recall the details of her involvement in the preparation of the

---

[5] We note that the Court in *Intex Recreation Corp. v. Team Worldwide Corp.*, 439 F. Supp. 2d 46 (D.D.C. 2006), applied an even more restrictive standard. *See id.* at 47 (allowing discovery only as to communications and work product that either "question or contradict the competence or validity of the opinions relied upon by the accused infringer to rebut willfulness"). Magistrate Judge Dohnal declined to follow that standard as to document discovery in the Virginia Litigation.

opinion or the patents-in-suit. (*Id.* ¶ 4-5) Even so, if LifeNet nonetheless still wants to depose Udupa, the Court should modify her subpoena to permit questioning on only the following:

- The Stimpson Opinion;

- The validity, enforceability or infringement of the '871 and '104 patents (those addressed in the Stimpson Opinion); and

- Any communications or work product she communicated to MTF respecting these two issues.

And given LifeNet's apparent desire to use these subpoenas as a platform from which it intends to forage through MTF's trial strategy and other protected areas, the Udupa Subpoena should be modified to expressly <u>preclude</u> testimony on:

- The Hale Opinions;

- Any other legal advice rendered or work performed by Udupa for MTF unrelated to whether the patents-in-suit are valid, enforceable or have been infringed, including without limitation, work on matters and patents or patent applications for MTF other than the patents-in-suit;

- Any litigation tactics or strategies in connection with the Virginia Litigation, including without limitation, communications, if any, with MTF's trial counsel concerning such litigation strategies.

### 2.     At the Very Least, the Hale Subpoena Should Be Modified to Limit its Scope, Time Period and Subject Matter

In the event the Court does not quash the Third Party Subpoena served on Hale, the author of several of the opinions in question, his subpoena should also be modified to permit questioning only on the following topics:

- The Hale Opinions;

- The validity, enforceability or infringement of the patents-in-suit discussed in the Hale Opinions; and

- Any communications or work product he communicated to MTF respecting these two issues.

And again, in light of LifeNet's apparent intent to misuse this deposition process, MTF

requests that the Court modify the Hale Subpoena to expressly <u>preclude</u> testimony on:

- The Stimpson Opinion;

- Any other legal advice rendered or work performed by Hale for MTF unrelated to whether the patents-in-suit are valid, enforceable or have been infringed, including without limitation, work on matters and patents or patent applications for MTF other than the patents-in-suit;

- Any litigation tactics and strategies in connection with the Virginia Litigation, including without limitation, communications, if any, with MTF's trial counsel concerning such litigation strategies.

## <u>CONCLUSION</u>

For the foregoing reasons, the Third Party Subpoenas should be quashed in their

entirety, or, in the alternative, modified as described herein.

Respectfully submitted,

Dated: May 24, 2007

_____
Danielle Hohos (Bar No. 485633)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel. (202) 879-3939
*Counsel for Movants Vaishali Udupa
and John S. Hale*

OF COUNSEL:

Robert W. Gaffey
William J. Hine
Tracy V. Schaffer
JONES DAY
222 East 41st Street
New York, New York 10017
Tel: (212) 326-3939

## **CERTIFICATE OF CONFERENCE**

Pursuant to Federal Rule of Civil Procedure Rule 26(c), I hereby certify that on May 21, 22, and 23, 2007, counsel for MTF conferred with counsel for LifeNet in an effort to resolve the issues set forth in the instant motion without court action.  The parties were unable to do so.

William J. Hine
*Counsel for Movants Vaishali Udupa and John S. Hale*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2007, I caused a true and correct copy of the foregoing Memorandum of Points and Authorities in Support of Third Parties Vaishali Udupa and John S. Hale's Motion to Quash or Alternatively to Modify Subpoenas Pursuant to Fed. R. Civ. P. 45 (c)(3)(A) and 26(c) on the following individuals:

**VIA FEDERAL EXPRESS**
Craig T. Merritt)
R. Braxton Hill, IV
Christian & Barton LLP
909 East Main Street, Suite 1200
Richmond, VA 23219

**VIA HAND DELIVERY**
W. Jackson Matney, Jr.
Robert W. Busby
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

Danielle M. Hohos

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIFENET, INC., | Misc. Civil Action No.: |
| Plaintiff/Counterclaim-Defendant, | |
| v. | Civil Action No. 3:06CV387-HEH (E.D. Va.) |
| MUSCULOSKELETAL TRANSPLANT FOUNDATION | DECLARATION OF THOMAS G. ROWAN PURSUANT TO 28 U.S.C. §1746 |
| Defendant/Counterclaim-Plaintiff. | |

Thomas G. Rowan declares as follows:

1.      I make this declaration in support of Third Parties Vaishali Udupa and John S. Hale's Motion to Quash, or Alternatively To Modify, Subpoenas Pursuant to Fed. R. Civ. P. 45(c)(3)(A) and 26(c), dated May 24, 2007 (the "Motion"). I make the following statements based on my personal knowledge.

2.      I am a partner in the New York office of Jones Day. I am trial counsel, along with my partner Brian M. Poissant, for Musculoskeletal Transplant Foundation ("MTF"), the defendant in a patent infringement case pending in the Eastern District of Virginia captioned *LifeNet, Inc. v. Musculoskeletal Transplant Foundation*, Civil Action No. 06-CV-387 (E.D. Va.) (HEH) (the "Virginia Litigation"). Movants Vaishali Udupa, Esq. and John S. Hale, Esq. (the "Movants") are both attorneys who have represented Musculoskeletal Transplant Foundation ("MTF").

3.      I am informed that on or about May 4, 2007, John Hale, an attorney with the law firm of Gipple & Hale, was served with a third party subpoena issued from this Court by LifeNet, Inc. ("LifeNet"), directing Hale to produce documents and to appear for a deposition on

May 25, 2007.  On information and belief, Attached hereto as Exhibit A is a true and correct copy of such third party subpoena.

<u>The Virginia Litigation</u>

4.    MTF is a non-profit organization involved in tissue procurement and tissue preparation, including the preparation of human bone tissue for transplantation.  MTF provides processed bone tissue to various entities, including doctors and hospitals, for transplantation.  In connection with its preparation of bone tissue, MTF utilizes two processes that are relevant to this litigation:  the first to clean the bone, and the second is a separate process to demineralize the bone.

5.    On or about June 5, 2006, LifeNet, a competitor of MTF, filed a complaint which it later amended.  LifeNet alleges that MTF's bone cleaning and demineralization processes infringe four particular patents held by LifeNet:  U.S. Patent No. 5,797,871 ("the '871 patent"), entitled "Ultrasonic Cleaning of Allograft Bone"; U.S. Patent No. 5,976,104 ("the '104 patent"), entitled "Recirculation Method for Cleaning Essentially Intact Bone Grafts Using Pressure Mediated Flow of Solutions and Bone Graft Produced Thereby"; U.S. Patent No. 6,189,537 ("the '537 patent") and U.S. Patent No. 6,305,379 ("the '379 patent"), both entitled "Process for Producing Osteoinductive Bone, and Osteoinductive Bone Produced Thereby" (collectively, "the patents-in-suit").

6.    LifeNet has alleged infringement of the '871 and '104 patents based on MTF's use of its bone cleaning process for cleaning human bone tissue and MTF's sale of products produced through that process.  LifeNet alleges separate patent infringement claims with respect to the '537 and '379 patents, which relate to the process for demineralizing human bone.

7.      In its Amended Answer and Counterclaims, MTF asserted that it does not infringe any of the patents-in-suit and that the patents-in-suit are invalid for several reasons, including that certain of the claims under the patents are not novel in view of prior art.

8.      Discovery in the litigation is currently on-going. There is a Markman Hearing scheduled for May 31, 2007 to address the construction of claims in the patents-in-suit.

9.      Under the Virginia court's so-called "rocket docket," this litigation is proceeding at a very fast pace. Fact discovery is to be completed by July 2, 2007, opening expert reports are due July 9, 2007, with all expert discovery to be concluded by August 3, 2007. The case is scheduled for trial starting October 15, 2007.

MTF Asserted an Advice of Counsel Defense and Has Produced Documents Related Thereto

10.     On April 13, 2007, we advised the Court that in defense of LifeNet's willful infringement claims, MTF intends to rely at trial on a February 19, 2002 opinion letter rendered to MTF at the time by Scott Stimpson of Pennie & Edmonds LLP (the "Stimpson Opinion"). Subsequently, numerous Pennie & Edmonds lawyers joined the law firm of Jones Day, which is trial counsel for MTF.

11.     The Stimpson Opinion contained, *inter alia*, an analysis of whether MTF's bone cleaning process for cleaning bone allografts infringed the '871 and '104 patents (the "Bone Cleaning Patents"), two of the patents-in-suit in the Virginia Litigation. MTF will argue that it acted in good faith in connection with its use of its bone cleaning processes because it relied on the Stimpson Opinion when it began to engage in the purportedly infringing conduct.

12.     On or about May 2, 2007, MTF's trial counsel informed LifeNet that it intends to rely on certain other legal opinions issued by John Hale, of Gipple & Hale, in connection with the Virginia Litigation. Mr. Hale has served as counsel for MTF for many years and on a

number of other matters unrelated to the patents-in-suit.  The Hale opinions on which MTF intends to rely relate to the Bone Cleaning Patents, and the '537 and '379 patents concerning demineralization (collectively, the "Hale Opinions").

13.    On April 25, 2007, MTF produced copies of the Stimpson Opinions to LifeNet, along with nearly 400 pages of documents related to its preparation.  On May 18, 2007, MTF produced four Hale Opinions, along with close to 1,000 pages of documents embodying or discussing communications between MTF and its non-trial counsel concerning whether the patents-in-suit are valid, enforceable or infringed by MTF.

14.    LifeNet has issued a subpoena for documents and testimony from John Hale.  I am informed that John Hale had no involvement whatsoever in connection with the Stimpson Opinion.  LifeNet has sought no discovery of any kind (either documents or testimony) from the author of the Stimpson Opinion, *i.e.*, Scott Stimpson, the former partner at Morgan Lewis – LifeNet's counsel.  To date, LifeNet has taken no deposition discovery from MTF's employees as to MTF's reliance on the opinions at issue in this litigation.

MTF's Motion to Disqualify Morgan Lewis, Counsel for LifeNet

15.    On March 13, 2007, MTF moved to disqualify Morgan Lewis from representing LifeNet in the Virginia Litigation.  At the time of MTF's motion, Stimpson, the author of the Stimpson Opinion, was a partner at Morgan Lewis.  In the motion MTF contended that while he was a partner at Pennie & Edmonds, Stimpson received privileged and confidential information from MTF for the purpose of providing legal advice concerning the Bone Cleaning Patents, and on that basis issued the Stimpson Opinion.  MTF consequently moved to disqualify Morgan Lewis from acting as counsel for LifeNet because one of its members, Stimpson, had been privy

to privileged and confidential information while engaged by MTF and Stimpson's knowledge was therefore imputed to Morgan Lewis.

16.      The Honorable Henry E. Hudson, the judge presiding over the Virginia Litigation, held that a conflict of interest existed for Morgan Lewis under the Virginia Rules of Professional Conduct, but denied MTF's motion to disqualify because Stimpson had subsequently withdrawn from the Morgan Lewis firm.  The court held that this appeared "to have relieved the imputed conflict driving the disqualification requirement."  Attached hereto as Exhibit B is a true and correct copy of Judge Hudson's opinion on the disqualification motion.

17.      In its briefing in opposition to the motion to disqualify, Morgan Lewis stated that LifeNet would not call Stimpson as a witness at trial.  Attached hereto as Exhibit C is a copy of the Supplemental Opposition of Morgan Lewis & Bockius To Defendant's Motion To Disqualify, dated April 18, 2007, which contains that statement.

LifeNet Retaliates by Serving MTF's Trial Counsel With Subpoenas

18.      Less than two weeks after the court decided MTF's motion to disqualify, LifeNet served four of MTF's lawyers with third party subpoenas for documents and deposition testimony.  In addition to Udupa and Hale, LifeNet served third party subpoenas on me and my partner, Brian Poissant, who are serving as MTF's trial counsel in the Virginia litigation.  Brian Poissant and I will be moving to quash or to limit the subpoenas for our depositions in the Southern District of New York, the court that issued the subpoenas, on grounds similar to those raised in this Motion.  We have already responded and objected to the document requests contained in the third party subpoenas.

19.      It is my belief, based on the timing of the service of the subpoenas and the return dates set therein, that LifeNet served them for the improper purpose of interfering with our

ability to prepare for the Markman hearing and for trial. The return dates for the four subpoenas are set for the three business days prior to the scheduled Markman Hearing, a proceeding that is important to the Virginia Litigation and for which MTF's counsel will be preparing on the stated return dates.

20.      In a telephone call with LifeNet's litigation team at Morgan Lewis during the week of May 7, 2007, I informed LifeNet's counsel Robert Busby that the recipients were going to move to quash the Third Party Subpoenas. In response, a member of LifeNet's litigation team laughingly asked me why I did not want to be deposed while I was preparing for the Markman hearing. This led me to believe that these subpoenas were issued with the intention of distracting our preparation for the Markman hearing.

21.      I am informed that on May 21, 2007, Robert Gaffey, a partner at Jones Day, who is representing the Movants in this motion, spoke with David Morris, an attorney at the Morgan Lewis law firm, who is representing LifeNet in this action. Mr. Gaffey noted that there is a motion filed by LifeNet currently pending in the Virginia litigation that may address certain of the privilege issues presented by the Third Party subpoenas. Mr. Gaffey suggested that the parties postpone the depositions until the Eastern District of Virginia issues a decision on LifeNet's motion, which may address some of the privilege and waiver issues that arise in connection with these Third Party Subpoenas, and agree to discuss the matter shortly thereafter, including whether depositions would be necessary at all. Mr. Morris said he would respond to the suggestion later that day or the next day. On May 22, 2007, Mr. Morris rejected this proposal in a conversation with William Hine, another Jones Day partner. Subsequently, I understand that after the Magistrate in the Eastern District of Virginia issued a draft opinion on LifeNet's motion, counsel for LifeNet still refused to alter the dates of the depositions. Consequently, our

efforts to resolve the issue have failed and Udupa and Hale are forced to file this motion to quash LifeNet's third party subpoenas.

22.    I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York, this 23rd day of May 2007.

_____
Thomas G. Rowan

AO88  (Rev. 12/06) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ Columbia _____

LifeNet, Inc.

v.

Musculoskeletal Transplant Foundation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:06CV387-HEH (E.D. Va.)

TO:  John S. Hale
6665 Old Dominion Drive
McLean, VA 22101

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Ave., N.W., Washington, DC 20004 | DATE AND TIME  5/25/2007 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Exhibit A attached.

| PLACE   Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178 | DATE AND TIME  5/21/2007 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  5/4/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
R. Braxton Hill, IV, Esquire, counsel for Plaintiff
909 East Main Street, Suite 1200, Richmond, Virginia 23219, (804) 697-4108

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpœna a Civil Case.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| LIFENET, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>MUSCULOSKELETAL TRANSPLANT<br>FOUNDATION, INC.,<br><br>Defendant/Counterclaim-Plaintiff. | Civil Action No. 3:06CV387-HEH |

**REVISED NOTICE OF DEPOSITION OF JOHN S. HALE, ESQ.**

PLEASE TAKE NOTICE that Plaintiff and Counterclaim-Defendant LifeNet, Inc.

("LifeNet"), by counsel and pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, and

Rule 30 of the Local Rules for the Eastern District of Virginia, will take the deposition of John S.

Hale, Esq., at 9:00 a.m. on May 25, 2007, or at such time as the parties can agree within

reasonable variance of the noticed time, in the offices of Morgan Lewis & Bockius LLP, 1111

Pennsylvania Ave., N.W., Washington D.C. 20004.

The deposition will be recorded by stenographic and/or videographic means before a

Notary Public or other person authorized to administer oaths, and will continue from day to day

until completed.  LiveNote or other real time transcription may be used.  You are invited to

attend and cross-examine.

Dated:  May 4, 2007

Respectfully submitted
LIFENET, INC.
By Counsel

Craig T. Merritt (VSB #20281)
R. Braxton Hill, IV (VSB #41539)
Nichole Buck Vanderslice (VSB #42637)
Christian & Barton LLP
909 East Main Street, Suite 1200
Richmond, VA 23219
Telephone (804) 697-4100
Facsimile (804) 697-4112

*Of Counsel:*

W. Jackson Matney, Jr. (VSB #38998)
Robert W. Busby (VSB #41312)
David M. Morris (VSB #30146)
Jennifer L. Scism
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel: (202) 739-3000
Facsimile (202) 739-3001

2

## EXHIBIT A

### INSTRUCTIONS

1.  You are required to produce a document or tangible thing if it is within your possession, custody, or control.  Possession, custody, or control includes constructive possession such that you need not have actual physical possession. As long as you have the superior right to compel the production from a third party (including an agency, authority or representative), you have possession, custody or control.

2.  If any document is withheld, in whole or in part, for any reason, including without limitation, any claim of privilege, confidentiality, or work product, set forth separately with respect to each such statement: (a) the author of the document; (b) the addressee of the document; (c) the date of the document; (d) the identity of all persons having received copies of the document; (e) the subject matter of the document; and (f) a brief statement or synopsis of the matters dealt with in the document and/or the circumstances surrounding the making of the document.

### DEFINITIONS

1.  "Musculoskeletal Transplant Foundation, Inc." or "MTF" includes Musculoskeletal Transplant Foundation, Inc., as well as any subsidiary, parent, affiliate, owner, employee, officer, agent, or attorney thereof.

2.  The words "and" or "or" are construed both conjunctively and disjunctively, and each includes the other wherever such dual construction will serve to bring within the scope of these Requests any documents which would otherwise not be brought within its scope.  All such terms, as well as other conjunctions and prepositions,

are interpreted in the manner that provides the most complete answer and information.

3.    "Document" or "Documents" includes, without limitation, any and all written, printed, typed, electronic, photographic, recorded or graphic materials, however produced or reproduced, whether readable visually or with the assistance of any machine, including all originals, copies, drafts, additions, forms or versions thereof, including, but not limited to, all correspondence, notes, files, memoranda, reports, studies, summaries, data, compilations, diagrams, graphic representations or animations, analyses, diagrams, illustrations, charts, drawings, sketches, minutes, resolutions, press releases, letters, billing records, invoices, statements of account, telegrams, publications, facsimile transmission, telexes, contracts, agreements, applications, pleadings, court papers, recordings, video or audio tapes, magnetic storage media, e-mails, electronic documents, archived copies of e-mails and electronic documents, notebooks, day planners, appointment books, records, corporate or business records of forms, calendars, phone messages, telephone bills or logs, diaries, and any evidence or record of telephone or other communications by or with any person or entity and shall include the original of such document or a copy of the original if it is not available and any copies not identical to the original including, without limitation, any draft of such documents.

4.    The term "communication" includes, without limitation, any transmission of information by written, oral, pictorial, or other perceptible means, including correspondence, e-mail, telegraph, cables, telephone conversations, and personal

2

conversations.    A document or thing transferred, whether temporarily or permanently, from one person to another shall be deemed to be a communication between such persons whether or not such document or thing was prepared or created by the transferor or addressed to the transferee.

5.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.    "Referring to," means mentioning, discussing, summarizing, describing, referring to, depicting, evidencing, reflecting, embodying, constituting, concerning, containing, contradicting, identifying, responding to, compromising, constituting, including, regarding, reporting or in any way involving.

7.    Reference to any entity shall include, in addition to the entity, any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

8.    In order to bring within the scope of these Requests any information that might otherwise be considered outside their purview, any words written in the singular are construed as plural, and in the plural, as singular; verb tenses are construed to include past, present, and future tenses.

**DOCUMENTS**

1.    All documents and things that embody any communication between MTF and its in-house counsel, Gipple & Hale, and/or non-litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

3

2.  All documents and things that embody any communication between MTF and any litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

3.  All documents and things that embody drafts of any communication between MTF and its in-house counsel, Gipple & Hale, and/or non-litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379 including but not limited to non-infringement, invalidity, and unenforceability.

4.  All documents and things that embody drafts of any communication between MTF and any litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

5.  All documents and things referring to any communication between MTF and its in-house counsel, Gipple & Hale, and/or non-litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

6.  All documents and things referring to any communication between MTF and any litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this

_____ day of May 2007 on:


Dana J. Finberg, Esquire
LeCLAIR RYAN
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, VA 23219
Telephone: (804) 916-7109
Facsimile: (801) 916-7219

*BY HAND and EMAIL*

Brian M. Poissant, Esquire
Thomas G. Rowan, Esquire
Daniel L. Malone, Esquire
JONES DAY
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*BY EMAIL and OVERNIGHT MAIL*

_____
Counsel

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 1169191 (E.D.Va.)
(Cite as: Slip Copy)

Lifenet, Inc. v. Musculoskeletal Transplant Foundation
E.D.Va.,2007.
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia, Richmond Division.
LIFENET, INC., Plaintiff/Counterclaim-Defendant,
v.
MUSCULOSKELETAL TRANSPLANT FOUNDATION, Defendant/Counterclaim-Plaintiff.
Civil Action No. 3:06CV387-HEH.

April 19, 2007.

Conrad Moss Shumadine, Willcox & Savage PC, Norfolk, VA, Craig Thomas Merritt, Nichole Buck Vanderslice, Rowland Braxton Hill, IV, Christian & Barton LLP, Richmond, VA, Jennifer Lynn Scism, Robert William Busby, Jr., William Jackson Matney, Jr., Morgan Lewis & Bockius LLP, Washington, DC, for Plaintiff/Counterclaim-Defendant.
Dana Johannes Finberg, Leclair Ryan PC, Richmond, VA, Thomas Gerard Rowan, Brian Michael Poissant, Daniel Lawrence Malone, Eric Stops, Jones Day, New York, NY, for Defendant/Counterclaim-Plaintiff.

*MEMORANDUM OPINION*

**(Denying Defendant's Motion to Disqualify Plaintiff's Counsel)**

HENRY E. HUDSON, United States District Judge.
*1 This is a patent infringement action involving a bone cleansing process with clinical application. The matter is before the Court on the defendant's Motion to Disqualify Morgan Lewis & Bockius LLP as Counsel for Plaintiff. Both parties have filed extensive memoranda of law supporting their respective positions. In addition, the Court has reviewed *in camera* documents submitted by the Musculoskeletal Transplant Foundation ("MTF"). The Court heard oral argument on April 3, 2007. At the conclusion of the hearing, the Court found the existence of a conflict in Morgan Lewis's representation of Plaintiff LifeNet, Inc., but deferred action on the issue of disqualifica-

tion pending submission of supplemental memoranda.

Few of the operative facts are in dispute. Counsel for the plaintiff, Robert W. Busby and W. Jackson Matney, began their representation of LifeNet while affiliated with the law firm of Baker & McKenzie in Washington, D.C. They had served as LifeNet's sole intellectual property counsel for a number of years. In February 2007, Mr. Busby and Mr. Matney moved their practice to Morgan Lewis, taking their client LifeNet and this case with them. The day following their association with Morgan Lewis, MTF served notice on Morgan Lewis and the Court of a potential conflict.

The alleged conflict focuses on another attorney with Morgan Lewis, Scott Stimpson, who had authored a non-infringement opinion for Defendant MTF. This opinion was issued in February 2002 while Mr. Stimpson was practicing with the firm of Pennie & Edmonds, LLP. The opinion issued by Mr. Stimpson found that MTF's bone washing process did not infringe LifeNet's bone washing process patents. The opinion bore the conspicuous notation "CONFIDENTIAL/ATTORNEY-CLIENT PRIVILEGE" and referred to two of the accused patents in this case, U.S. Patent Nos. 5,797,871 and 5,976,104.FN1

> FN1. Once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed. *Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 224 n. 3 (7th Cir.1978).

On December 31, 2003, after Pennie & Edmonds dissolved its practice, Mr. Stimpson moved to the firm of Morgan Lewis in New York. Upon discovering the potential conflict, Morgan Lewis established an ethical screen to prevent disclosure of confidential information from Mr. Stimpson to Mr. Busby and Mr. Matney. In fact, Mr. Busby and Mr. Matney deny ever meeting Mr. Stimpson, who denies ever representing MTF. However, documents submitted for *in camera*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1169191 (E.D.Va.)
**(Cite as: Slip Copy)**

review appear to establish a prior attorney-client relationship.[FN2]

> FN2. MTF has neither consented to nor waived any potential conflict. To the contrary, it has filed this motion for disqualification.

It is important to note that LifeNet has included a claim of willful infringement. The opinion letter issued by Mr. Stimpson in February 2002 could have potential relevance on that issue. In fact, by letter dated April 13, 2007, MTF through counsel notified this Court that it "intends to use Mr. Stimpson's opinion at trial." Following this disclosure, counsel for Morgan Lewis informed the Court in its Supplemental Memorandum in Opposition to Disqualification, that Mr. Stimpson had withdrawn from the firm effective April 17, 2007.

The well-established analytical framework for reviewing motions for disqualification of counsel on the basis of conflict of interest has two components. Initially, this Court must determine whether a conflict exists, and if so, whether the drastic remedy of disqualification is warranted. To support its claim of conflict of interest, MTF must establish that an attorney-client relationship existed between MTF and Mr. Stimpson and that the former representation and the current infringement suit are substantially related. *Allegaert v. Perot*, 565 F.2d 246, 250 (2nd Cir.1977); *see also Tessier v. Plastic Surgery Specialist, Inc.*, 731 F.Supp. 724, 730 (E.D.Va.1990). "Substantially related" has been defined to be "identical" or essentially the same. *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 738 (2nd Cir.1978).

\*2 Based on a review of the materials submitted and the argument of counsel, the Court is of the opinion that Mr. Stimpson's attorney-client relationship with MTF is substantially related to the issues in the immediate claim and is materially adverse to Mr. Busby's and Mr. Matney's representation of LifeNet. Their relationship is therefore a conflict under Virginia Rule of Professional Conduct 1.9.[FN3] By extension, the conflict is imputed to the entire firm under Virginia Rule of Professional Conduct 1.10.[FN4] Having found that a conflict at some point existed,

the Court must next determine if Scott Stimpson's withdrawal from Morgan Lewis dissolves the need for disqualification.

> FN3. Rule 1.9(a) states:
> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related mater in which that person's interests are materially adverse to the interest of the former client unless both the present and former client consent after consultation.
> Va. Rules of Prof'l Conduct 1.9(a).

> FN4. Rule 1.10(a) states:
> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1. 6, 1.7, 1.9, or 2.10(e).
> Va. Rules of Prof'l Conduct 1.10(a).

In deciding the appropriate remedy for a conflict of interest, this Court is mindful of the Fourth Circuit admonition in *United States v. Clarkson*, 567 F.2d 270 (4th Cir.1977). "[T]he trial court is not to weigh the circumstances 'with hair splitting nicety', but in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety' it is to resolve all doubt in favor of disqualification." *Id.* at 273 n. 3 (internal citations omitted). On the other hand, the Court must also consider the consequent loss of time and money potentially incurred by Plaintiff if it is compelled to engage new counsel. *Government of India*, 569 F.2d at 737. The attorneys here in question have represented the plaintiff for several years. Substitute counsel would undoubtedly require several months to familiarize themselves with this case, perhaps necessitating a continuance of the Markman hearing and trial.

The Fourth Circuit has also counseled trial courts to avoid "a mechanical application" of the Virginia Rules of Professional Conduct. As the Fourth Circuit commented,
It behooves this court, therefore, while mindful of the existing Code, to examine afresh the problems sought

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to be met by the Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring that the client and the judicial system to sacrifice more than the value of the presumed benefits.

*Aetna Cas. & Sur. Co. v. United States,* 570 F.2d 1197, 1202 (4th Cir.1978).[FN5]

> **FN5.** In *Aetna Cas. & Sur. Co.,* the Fourth Circuit is referring to the Virginia Code of Professional Responsibility, which was replaced by the Virginia Rules of Professional Conduct on January 1, 2000. *See In re Morrisey,* 305 F.3d 211 (4th Cir.2002).

Counsel for Morgan Lewis argues in its supplemental memorandum that Mr. Stimpson's withdrawal from the firm relieves the imputed conflict and eliminates any basis for disqualification. Counsel contends that Rule 1.10 of the Virginia Rules of Professional Conduct, the genesis of the imputed conflict at issue in this case, is limited in application to lawyers currently practicing with the firm. Rule 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so." Va. Rules of Prof'l Conduct 1.10(a). Morgan Lewis points out that this interpretation is supported by the official comments to Rule 1.10 and Virginia Legal Ethics Opinion No. 1810 (2004).

**\*3** Morgan Lewis, through counsel, further argues that MTF's disclosure that it intends to offer the non-infringement opinion authored by Mr. Stimpson as evidence in this case in legal effect waives both the attorney-client privilege and any attendant work product immunity. Morgan Lewis relies upon *In re Echostar Communications Corp.,* 448 F.3d 1294 (Fed.Cir.2006). The court in *Echostar* noted that "[o]nce a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived. The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications

relating to the same subject matter." *Echostar Commc'ns,* 448 F.3d at 1299 (internal citations omitted). Such disclosure has a similar but much more limited effect on the confidentiality of work product. *Id.* at 1302-04. The unveiling of any privilege associated with Mr. Stimpson's opinion is a significant factor in weighing the remedy of disqualification.

Although the defendant's initial argument in favor of disqualification may have been firmly rooted, subsequent events have weakened its foundation. The withdrawal of Mr. Stimpson from the firm appears to relieve the imputed conflict driving the disqualification requirement. There is no evidence in this case that Mr. Stimpson provided any information to Mr. Busby or Mr. Matney concerning the non-infringement opinion prepared for MTF. In fact, it appears that Mr. Busby and Mr. Matney have never met Mr. Stimpson. While affiliated with Morgan Lewis, Mr. Stimpson practiced in the New York office, Mr. Busby and Mr. Matney in the Washington office. Therefore, even if the attorney-client privilege continued to attach to communications related to the non-infringement opinion, there is no indication that any such confidential information was imparted to Mr. Busby or Mr. Matney. Therefore, the limiting language of Rule 1.10(b) of the Virginia Rules of Professional Conduct is not implicated in this case.

In the final analysis, this Court finds that disqualification is not warranted. The withdrawal of Mr. Stimpson from Morgan Lewis relieves the firm's potentially adverse relationship with MTF. To require disqualification at this stage of the proceedings would have an adverse impact on the judicial process and severely prejudice the plaintiff. Such a "mechanical and didactic application" of the Virginia Rules of Professional Conduct would disserve the interest of justice in this case. *Aetna Cas. & Sur. Co.,* 570 F.2d at 1202.

For the foregoing reasons, Defendant's Motion to Disqualify Morgan Lewis & Bockius LLP as Counsel for Plaintiff will be denied. An appropriate Order will accompany this Memorandum Opinion.

E.D.Va.,2007.
Lifenet, Inc. v. Musculoskeletal Transplant Founda-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 1169191 (E.D.Va.)
**(Cite as: Slip Copy)**

tion
Slip Copy, 2007 WL 1169191 (E.D.Va.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

LIFENET, INC.,                          )
                                        )
    Plaintiff/Counterclaim-Defendant,   )
                                        )
    v.                                  )   CA 3:06cv387-HEH
                                        )
MUSCULOSKELETAL TRANSPLANT              )
FOUNDATION, INC.,                       )
                                        )
    Defendant/Counterclaim-            )
    Plaintiff.                          )

### SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DISQUALIFICATION OF MORGAN LEWIS & BOCKIUS LLP

Morgan Lewis & Bockius LLP ("Morgan Lewis") should not be disqualified. Jones Day's belated decision to rely on Stimpson's 2002 opinion letter at trial is not a basis for disqualification under these circumstances. While Jones Day attempts to use the opinion as a strategic sword to disqualify counsel, its decision means that MTF has waived the attorney-client privilege for all communications relating to Stimpson's opinion letter. *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). Hence, the issue of client confidences—to the extent it was ever a concern—is not a basis for imputed disqualification. Regardless, Mr. Stimpson has now resigned from Morgan Lewis. There is, therefore, no longer a legal basis for the imputed disqualification of the law firm.

### A.    Stimpson Has Withdrawn From Morgan Lewis: There Is No Longer Any Legal Basis To Disqualify Morgan Lewis

Effective April 17, 2007, Scott Stimpson voluntarily withdrew from Morgan Lewis. *See Declaration of Michael Bloom, attached as Exhibit A.* Mr. Stimpson previously advised the Court of his willingness to take that step. It now has been done. It was done to avoid any possible basis for disqualification and thereby avoid the extreme prejudice to LifeNet that would result from disqualification. Information

regarding his withdrawal is set forth in the accompanying declaration of Michael Bloom.

Stimpson's withdrawal removes any legal basis for disqualification. Rule 1.10(a) provides that "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so" by the Rules. *Rule 1.10 Virginia Rules of Professional Conduct.* The Rule is explicit: imputed disqualification applies only to lawyers *currently* together in a firm. That point is reinforced by the official comments: the rule of imputed disqualification "operates only among the lawyers *currently associated in a firm.*" *Rule 1.10, Comment 2* (emphasis added). The Virginia State Bar also has weighed in, opining that "the imputation of conflicts of interest is limited to those attorneys in the firm together now." *Virginia Legal Ethics Opinion 1810* (2004)(emphasis added).

Here, Stimpson's withdrawal removes his conflict and removes the basis for imputing any disqualification to Morgan Lewis. It removes Stimpson's conflicted position because he now has no adverse relationship with MTF. It removes the basis for imputed disqualification because, as discussed above, even if Stimpson had a conflict, imputation applies only to the firm while he is a member of the firm.

Rule 1.10(b) reinforces this point. That Rule provides that after a lawyer has terminated association with a firm, the firm is not prohibited from representing adverse interests to those of the clients of the departed lawyer unless other lawyers in the firm have confidential information which is protected by Rule 1.6. In light of MTF's decision to waive the privilege, there is no longer any MTF confidential information protected -- that protection is waived. *See In re EchoStar Communications*, 448 F.3d at 1304 ("when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives . . . both the attorney-client privilege and the work-product immunity").

2

Moreover, the declarations of Stimpson, Busby, Matney and Bloom make clear that no one at Morgan Lewis possesses MTF confidential information because:

- Stimpson brought no MTF files with him to Morgan Lewis;
- Stimpson did not share any information about MTF with Messrs. Busby, Matney or others at Morgan Lewis;
- An isolation firewall was immediately imposed when the asserted conflict was raised;
- During the six weeks while Busby, Matney and Stimpson were all associated with Morgan Lewis, they worked in different offices, in different geographic locations, and did not ever meet or share information about MTF.

Likewise, when MTF asserted a conflict based on Stimpson's alleged prior representation, *only* Morgan Lewis' ethics counsel had discussions with Stimpson and it is likewise undisputed that no confidential information about MTF was exchanged. The extent of Stimpson's exchange of information was provided to the Court in his Declaration, which made clear Stimpson's limited recollection of his prior work and established that no confidences were ever disclosed, not even to ethics counsel. Thus, Rule 1.10(a) provides no basis for imputed disqualification and Rule 1.10(b) recognizes Morgan Lewis' ability to continue its representation of LifeNet.

Mr. Stimpson's withdrawal from the firm is unfortunate but undertaken because of Jones Day's tactical insistence that the entire firm be disqualified. These circumstances should not have required such drastic steps impacting an attorney's professional life. But this step assures that there is no longer a legal basis for the disqualification of Morgan Lewis, that LifeNet's interests in having its counsel of choice prosecute this action are preserved, and that LifeNet need not suffer the severe prejudice that would accompany the loss of counsel who have worked with it for years.

### B.  MTF'S Waiver Of The Attorney-Client Privilege Eliminates All Issues of Confidentiality.

Even if Mr. Stimpson had not resigned, disqualification still would have been inappropriate. After months of failing to identify Stimpson as a witness, failing to produce the opinion or identify it in a privilege log, and failing to assert advice of

3

Apr-18-2007  04:40pm  Fr.. .ENABLE LLP VIENNA VA          +7.  .8949          T-962  P.007/014  F-606

counsel as a defense to willfulness, Jones Day now says it intends to use the Stimpson opinion letter at trial. That decision constitutes a waiver of all confidences as a matter of law.[1] Having asserted reliance, MTF has broadly waived *all* claims of confidentiality with respect to any communications between MTF and Stimpson or other Pennie & Edmonds lawyers involved in the opinion (such as MTF's present trial counsel Brian Poissant) regarding this subject matter. *See In re EchoStar Communications Corp.*, 448 F.3d at 1302-04.

Whatever duty of confidentiality Stimpson owed to MTF can no longer be the basis for disqualification.[2] There are no longer any confidences with respect to this matter to be protected. Thus, the concerns over maintaining client confidences—the very basis for imputed disqualification—are no longer concerns.

Furthermore, Stimpson's duty of confidentiality was adequately addressed through the isolation firewall immediately put in place. The firewall fully protected MTF from having Stimpson participate in the representation of LifeNet.

In any event, Stimpson is now nothing more than a neutral person with potential knowledge of non-privileged information. And LifeNet will not call Stimpson as a witness.[3] But even if Stimpson is a potential witness, disqualification is unwarranted. His role as witness does not implicate at all the advocate/witness prohibition. That opinion was written while Stimpson was at Pennie & Edmonds before he came to Morgan Lewis and he is no longer at Morgan Lewis. He has no role

---

[1]   Though Jones Day advises the Court that it will use the letter at trial, it has still refused to produce the letter to LifeNet. *See* 4/16/07 Letter and Jones Day Response attached as. Exhibits B and C. This position raises the question whether defendant plans to "change its mind" after the motion is decided.

[2]   The Court's previous conclusion that Mr. Stimpson had a conflict was presumably based on Stimpson's acknowledged duty to maintain the confidences of a non-client—since the opinion letter supports Stimpson's declaration statement that he performed work for another client, not MTF.

[3]   Lawyers are rarely called. The defense turns on whether defendant had a good faith belief in non infringement or invalidity, not the mere existence or correctness of an opinion of counsel. *Echostar*, 448 F.3d at 13001-1305.

Received  Apr-18-07  04:25pm          From+7039218949          To-LeClair Ryan          Page 007

representing either MTF or LifeNet as advocate. And he has no conflict if he is called as a witness. His only role is to answer those questions he is asked.

### C.   Imputed Disqualification Is Not Warranted.

There is no *per se* rule of imputed disqualification. *See Papyrus Technology v. New York Stock Exchange, Inc.*, 325 F. Supp. 2d 270, 278 (S.D.N.Y. 2004); *Stokes v. Firestone*, 156 B.R. 181, 185 (E.D.Va. 1993). And the so-called "default" position favoring disqualification in "close cases" has not been advanced by the Fourth Circuit in dealing with imputed disqualification, under Rule 1.10, but only in analyzing whether an individual lawyer must be disqualified. Imputed disqualification is a drastic step and the focus of the analysis is the necessity to protect the integrity of the litigation process and trial. *Papyrus Technology*, 731 F. Supp. 2d at 276; *Stokes*, 156 B.R. at 185.

Most importantly, the Court must take into account the impact on the client whose counsel may be disqualified. The devastating impact on LifeNet of disqualification is undisputed. Likewise, MTF's claimed reliance on that letter as a defense to willful infringement does not insert any issue that undermines the integrity of the litigation process or the trial.

Stimpson's departure from Morgan Lewis removes the legal basis for imputed disqualification. All concerns over client confidences are moot and his role as possible witness presents no conflict at all, much less one that supports imputing disqualification to an entire firm that never represented MTF in any way. The motion should be denied.

Respectfully submitted:
VENABLE LLP

William D. Dolan, III, VSB No. 12455
Michael W. Robinson, VSB No. 26522
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
(703) 760-1684
(703) 821-8949 (facsimile)

*Counsel for Morgan, Lewis & Bockius LLP*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served, via facsimile and U.S. mail, this ___ day of April, 2007 on:

Dana J. Finberg (VSB No. 34977)
David J. Sensenig (VSB No. 41102)
LECLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA 23218-2499
Tel: (804) 783-2003
Fax: (804) 783-2294

Brian M. Poissant
Thomas G. Rowan
Daniel L. Malone
JONES DAY
222 East 41st Street
New York, NY 10017
Tel: (212) 326-3939
Fax: (212) 326-7306

*Attorneys for Defendant/Counterclaim Plaintiff
Musculoskeletal Transplant Foundation*

MCIDOCS1\225070

6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIFENET, INC.,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>       v.<br><br>MUSCULOSKELETAL TRANSPLANT<br>FOUNDATION<br><br>    Defendant/Counterclaim-Plaintiff. | Misc. Civil Action No.:<br><br>Civil Action No. 3:06CV387-HEH (E.D. Va.)<br><br>DECLARATION OF<br>VAISHALI UDUPA<br>PURSUANT TO 28 U.S.C. § 1746 |

Vaishali Udupa declares as follows:

1.　　I make this declaration in support of Third Parties Vaishali Udupa and John S. Hale's Motion to Quash, Or Alternatively To Modify, Subpoenas Pursuant To Fed. R. Civ. Pro. 45(c)(3)(A) and 26 (c) in the above-captioned action.

2.　　I am an associate at the Jones Day law firm in its Washington D.C. office.  I was informed that on or about May 4, 2007, Jones Day accepted service of a third party subpoena issued from this Court by LifeNet Inc., directing me to appear for a deposition on May 29, 2007. Attached hereto as Exhibit A is a true and correct copy of such third party subpoena.

3.　　Prior to joining Jones Day, I was an associate at the law firm of Pennie & Edmonds LLP.  At the time the February 19, 2002 opinion letter written by Scott Stimpson, Esq. of Pennie & Edmonds LLP (the "Stimpson Opinion") was prepared and issued to Musculoskeletal Transplant Foundation, Inc. ("MTF"), I was a second-year associate at Pennie & Edmonds LLP.

4.      On information and belief, on or about February 19, 2002, I was provided a copy of the Stimpson Opinion and may have received copies of other documents related thereto, although I have no recollection of any specific documents I may have received.

5.      I do not recall the details of my involvement in the preparation of the Stimpson Opinion.

6.      I do not recall having any communications with anyone from MTF concerning the Stimpson Opinion.

7.      Other than the Stimpson Opinion, I was not involved in the preparation of any opinions or any other work related to the validity, infringement and/or enforceability of U.S. Patent No. 5,797,871, U.S. Patent No. 5,976,104, U.S. Patent No. 6,189,537 and U.S. Patent No. 6,305,379.

8.      I have been informed that LifeNet has also served a subpoena on John Hale, of the firm of Gipple & Hale, in connection with the above-captioned action and that Mr. Hale may have prepared certain opinions for MTF.  I have never worked with Mr. Hale and had no involvement whatsoever in the preparation of any opinions written by Mr. Hale.

9.      I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington D.C., this 23 day of May 2007.

Vaishali Udupa

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF                    Columbia

LifeNet, Inc.

V.

Musculoskeletal Transplant Foundation

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  3:06CV387-HEH (E.D. Va.)

TO:   Vaishali Udupa
      Jones Day
      51 Louisiana Avenue, N.W.
      Washington, DC 20001

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Ave., N.W., Washington, DC 20004 | DATE AND TIME 5/29/2007 9:00 am |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A attached.

| PLACE    Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Ave., N.W., Washington, DC 20004 | DATE AND TIME 5/21/2007 9:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 5/4/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
R. Braxton Hill, IV, Esquire, counsel for Plaintiff
909 East Main Street, Suite 1200, Richmond, Virginia 23219, (804) 697-4108

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/06) Subpo      a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE                                                    SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**EXHIBIT A**

**INSTRUCTIONS**

1.    You are required to produce a document or tangible thing if it is within your possession, custody, or control.  Possession, custody, or control includes constructive possession such that you need not have actual physical possession. As long as you have the <u>superior right</u> to compel the production from a third party (including an agency, authority or representative), you have possession, custody or control.

2.    If any document is withheld, in whole or in part, for any reason, including without limitation, any claim of privilege, confidentiality, or work product, set forth separately with respect to each such statement: (a) the author of the document; (b) the addressee of the document; (c) the date of the document; (d) the identity of all persons having received copies of the document; (e) the subject matter of the document; and (f) a brief statement or synopsis of the matters dealt with in the document and/or the circumstances surrounding the making of the document.

**DEFINITIONS**

1.    "Musculoskeletal Transplant Foundation, Inc." or "MTF" includes Musculoskeletal Transplant Foundation, Inc., as well as any subsidiary, parent, affiliate, owner, employee, officer, agent, or attorney thereof.

2.    The words "and" or "or" are construed both conjunctively and disjunctively, and each includes the other wherever such dual construction will serve to bring within the scope of these Requests any documents which would otherwise not be brought

within its scope. All such terms, as well as other conjunctions and prepositions, are interpreted in the manner that provides the most complete answer and information.

3. "Document" or "Documents" includes, without limitation, any and all written, printed, typed, electronic, photographic, recorded or graphic materials, however produced or reproduced, whether readable visually or with the assistance of any machine, including all originals, copies, drafts, additions, forms or versions thereof, including, but not limited to, all correspondence, notes, files, memoranda, reports, studies, summaries, data, compilations, diagrams, graphic representations or animations, analyses, diagrams, illustrations, charts, drawings, sketches, minutes, resolutions, press releases, letters, billing records, invoices, statements of account, telegrams, publications, facsimile transmission, telexes, contracts, agreements, applications, pleadings, court papers, recordings, video or audio tapes, magnetic storage media, e-mails, electronic documents, archived copies of e-mails and electronic documents, notebooks, day planners, appointment books, records, corporate or business records of forms, calendars, phone messages, telephone bills or logs, diaries, and any evidence or record of telephone or other communications by or with any person or entity and shall include the original of such document or a copy of the original if it is not available and any copies not identical to the original including, without limitation, any draft of such documents.

4. The term "communication" includes, without limitation, any transmission of information by written, oral, pictorial, or other perceptible means, including

correspondence, e-mail, telegraph, cables, telephone conversations, and personal conversations.    A document or thing transferred, whether temporarily or permanently, from one person to another shall be deemed to be a communication between such persons whether or not such document or thing was prepared or created by the transferor or addressed to the transferee.

5.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.    "Referring to," means mentioning, discussing, summarizing, describing, referring to, depicting, evidencing, reflecting, embodying, constituting, concerning, containing, contradicting, identifying, responding to, compromising, constituting, including, regarding, reporting or in any way involving.

7.    Reference to any entity shall include, in addition to the entity, any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

8.    In order to bring within the scope of these Requests any information that might otherwise be considered outside their purview, any words written in the singular are construed as plural, and in the plural, as singular; verb tenses are construed to include past, present, and future tenses.

**DOCUMENTS**

1.    All documents and things that embody any communication between MTF and its in-house counsel, Pennie & Edmonds, and/or non-litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871,

5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

2.    All documents and things that embody any communication between MTF and any litigation counsel, including but not limited to Jones Day and LeClair Ryan, concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

3.    All documents and things that embody drafts of any communication between MTF and its in-house counsel, Pennie & Edmonds, and/or non-litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

4.    All documents and things that embody drafts of any communication between MTF and any litigation counsel, including but not limited to Jones Day and LeClair Ryan, concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

5.    All documents and things referring to any communication between MTF and its in-house counsel, Pennie & Edmonds, and/or non-litigation counsel concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

4

6.   All documents and things referring to any communication between MTF and any litigation counsel, including but not limited to Jones Day and LeClair Ryan, concerning any defense to infringement by MTF of U.S. Patent Nos. 5,976,104, 5,797,871, 5,333,626, 5,513,662, 6,189,537 and 6,305,379, including but not limited to non-infringement, invalidity, and unenforceability.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

LIFENET, INC.,

Plaintiff/Counterclaim-Defendant,

v.

MUSCULOSKELETAL TRANSPLANT
FOUNDATION, INC.,

Defendant/Counterclaim-Plaintiff.

Civil Action No. 3:06CV387-HEH

**NOTICE OF DEPOSITION OF VAISHALI UDUPA**

PLEASE TAKE NOTICE that Plaintiff and Counterclaim-Defendant LifeNet, Inc.

("LifeNet"), by counsel and pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, and

Rule 30 of the Local Rules for the Eastern District of Virginia, will take the deposition of

Vaishali Udupa at 9:00 a.m. on May 29, 2007, or at such time as the parties can agree within

reasonable variance of the noticed time, in the offices of Morgan Lewis & Bockius LLP, 1111

Pennsylvania Ave., N.W., Washington, D.C. 20004.

The deposition will be recorded by stenographic and/or videographic means before a

Notary Public or other person authorized to administer oaths, and will continue from day to day

until completed.  LiveNote or other real time transcription may be used.  You are invited to

attend and cross-examine.

Dated: May 4, 2007

> Respectfully submitted
> LIFENET, INC.
> By Counsel

1

Craig T. Merritt (VSB #20281)
R. Braxton Hill, IV (VSB #41539)
Nichole Buck Vanderslice (VSB #42637)
Christian & Barton LLP
909 East Main Street, Suite 1200
Richmond, VA 23219
Telephone (804) 697-4100
Facsimile (804) 697-4112

*Of Counsel:*

W. Jackson Matney, Jr. (VSB# 38998)
Robert W. Busby (VSB# 41312)
David M. Morris (VSB# 30146)
Jennifer L. Scism
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel: (202) 739-3000
Facsimile (202) 739-3001

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this _____ day of May 2007 on:

Dana J. Finberg, Esquire
LeCLAIR RYAN
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, VA 23219
Telephone: (804) 916-7109
Facsimile: (801) 916-7219

*BY HAND and EMAIL*

Brian M. Poissant, Esquire
Thomas G. Rowan, Esquire
Daniel L. Malone, Esquire
JONES DAY
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*BY EMAIL and OVERNIGHT MAIL*

_____
Counsel